**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

PAUL OCHOA

                      *Plaintiff,*

           -against-

5 SQUARE MANAGEMENT LLC, 4 SQUARE
MANAGEMENT LLC., GREENE STREET
ACQUISITIONS #1 CORP. d/b/a Greene St.
Acquisitions 1 Corp., BROWN BROTHERS GROUP
LLC., PPS UNION LLC, PPS UTICA LLC, PARK
PRO SYSTEMS, INC., ERIC S. BROWN a/k/a Erick
Brown, IAN BROWN, PAUL PIERORAZIO and
MARCO BARRANCOS

                 *Defendants*

-------------------------------------------------------------X

**Case No: 24-cv-7300**

**MEMORANDUM OF LAW IN SUPPORT PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT**

       Plaintiff respectfully submits this memorandum of law in support of Plaintiff's application for a default judgment against Defendants 4 SQUARE MANAGEMENT LLC., BROWN BROTHERS GROUP LLC, Greene Street Acquisitions #1 Corp. d/b/a Greene St. Acquisitions 1 Corp, PPS UNION LLC, PPS UTICA LLC, ERIC S. BROWN, IAN BROWN, PAUL PIERORAZIO and MARCO BARRANCOS ("Defendants") pursuant to Fed. R. Civ. P. 55(b)(2) and Local Rule 55.2(b).

<u>Procedural History</u>

       Plaintiff commenced this action by filing the Complaint (and associated documents) on October 17, 2024 with the filing of a summons and complaint (Dkt. No. 1); an amended complaint was filed on December 16, 2024. **See** Docket No. 8.

       This is an action for unpaid minimum and overtime wages, liquidated damages, interest, costs and attorneys' fees under the Fair Labor Standards Act (29 U.S.C. § 201 et seq., "the "FLSA") the New York Labor Law ("NYLL"), and associated rules and regulations. **See** Docket No. 1, generally, Complaint, for description of the nature of the claims.

The Court has subject matter jurisdiction of the Plaintiff's federal claims pursuant to 29 U.S.C. § 201 *et seq.* (FLSA) and 28 U.S.C. § 1331 (federal question), and jurisdiction over the New York state law claims (such as the NYLL) under 28 U.S.C. § 1367(a) (supplemental jurisdiction).  **See** Docket No. 1.

The complaint in this action was filed on October 17, 2024 with the filing of a summons and complaint (Dkt. No. 1); an amended complaint was filed on December 16, 2024. **See** Docket No. 8.

A summons and copy of the amended Complaint were properly served on Defendant Greene Street Acquisitions #1 Corp. on January 10, 2025 by service on the Secretary of State; and proof of such service on the said Defendant was filed on January 15, 2025 (Dkt. No. 12).

A summons and copy of the amended Complaint were properly served on Defendant 4 Square Management LLC on March 13, 2025 by service on the Secretary of State; and proof of such service on the said Defendant was filed on March 19, 2025 (Dkt. No. 16).

A summons and copy of the amended Complaint were properly served on Defendant Brown Brothers Group LLC on March 13, 2025 by service on the Secretary of State; and proof of such service on the said Defendant was filed on March 19, 2025 (Dkt. No. 16)

A summons and copy of the amended Complaint were properly served on Defendant PPS Union LLC, on March 13, 2025 by service on the Secretary of State; and proof of such service on the said Defendant was filed on March 19, 2025 (Dkt. No. 16).

A summons and copy of the amended Complaint were properly served on Defendant PPS Utica LLC, on March 13, 2025 by service on the Secretary of State; and proof of such service on the said Defendant was filed on March 19, 2025 (Dkt. No. 16)

A summons and copy of the amended Complaint were properly served on Defendant Marco Barrancos on March 12, 2025 by service on a person of suitable age and discretion at his place of work; and proof of such service on the said Defendant was filed on March 19, 2025 (Dkt. No. 16).

A summons and copy of the amended Complaint were properly served on Defendant Eric S. Brown on January 13, 2025 by service on a person of suitable age and discretion at his place of residence; and proof of such service on the said Defendant was filed on January 17, 2025 (Dkt. No. 13).

A summons and copy of the amended Complaint were properly served on Defendant Ian Brown on each January 10, 2025 by service on a person of suitable age and discretion at his place of abode and on January 15, 2025 by affixation at an alternate home address; and proof of such service on the said Defendant was filed on January 15, 2025 for the January 10th, 2025 service and filed on January 17, 2025 for the January 15th service (Dkt. No. 12 and 13, respectively)

A summons and copy of the amended Complaint were properly served on Defendant Paul Pierorazio on March 12, 2025 by service on a person of suitable age and discretion at his place of work; and proof of such service on the said Defendant was filed on March 19, 2025 (Dkt. No. 16).

To date, Defendants 4 SQUARE MANAGEMENT LLC., BROWN BROTHERS GROUP LLC, Greene Street Acquisitions #1 Corp. d/b/a Greene St. Acquisitions 1 Corp, PPS UNION LLC, PPS UTICA LLC, ERIC S. BROWN, IAN BROWN, PAUL PIERORAZIO and MARCO BARRANCOS have failed to Answer or otherwise appear in this action. The Clerk has notated their default on August 11, 2025. (Doc. No. 19).

On information and belief, none of the Defendants are infants, nor in the military, nor incompetent persons. Plaintiff has performed Service Member Relief Act searches for each

individual Defendant attached hereto as Exhibit H.  These searches cover the date of this filing and the time when this Complaint was filed and served on each individual Defendant.

No Defendants have Answered or otherwise appeared.

Statement of Facts Supporting Entry of Judgment

As alleged in the Complaint and as stated in Plaintiff's declaration, Plaintiff alleges the following:

Plaintiff was a former employee of Defendants at their parking garages located at  256 Utica Ave Brooklyn, NY, 53 Broadway Brooklyn, NY, and 321 Wythe Ave Brooklyn, NY.

Defendants own, operate, and/or controlled a parking garages located at 256 Utica Ave Brooklyn, NY, 53 Broadway Brooklyn, NY, and 321 Wythe Ave Brooklyn, NY. The Defendants freely interchanged their payroll to him and other employees using whichever corporate entity suited their accounting practices.

Defendants often issued Plaintiff two checks from different companies for the same pay period.

Plaintiff was employed by Defendants as a parking attendant and general laborer where his duties included moving customer cars within the garage and monitoring the safety of the premises.

The Defendants paid Plaintiff at a straight time rate that did not compensate Plaintiff for his overtime hours with the half time premium required by law, as set forth in more detail below.

Based upon his personal observations of each of the parking garages where Plaintiff worked located at  256 Utica Ave Brooklyn, NY, 53 Broadway Brooklyn, NY, and 321

Wythe Ave Brooklyn, NY the gross level of sales for each garage on its own exceeded $500,000.00 in each 2021, 2022 and 2023, and combined as a joint enterprise would surely exceed $500,000.00 in gross revenue.

Many of the cars I moved and parked for the Defendants within their garages had out of state plates.

At all times the owners and the men who benefitted from and established the pay practice of not paying Plaintiff overtime were Eric Brown and Ian Brown who are the sole owners of the closely held companies in this lawsuit.

Marcos Barrancos and Paul Pierorazio were the office managers who implemented to pay practices established by Eric Brown and Ian Brown.

The ownership, Eric Brown and Ian Brown, and the management team, Marcos Barrancos and Paul Pierorazio, in charge were the same for each of the parking garages where Plaintiff worked including each 256 Utica Ave Brooklyn, NY, 53 Broadway Brooklyn, NY, and 321 Wythe Ave Brooklyn, NY.

Those same men moved and directed Plaintiff himself and other employees to work as parking lot attendants at their discretion.

Defendant Eric S. Brown and Ian Brown along with their various companies operate and control over 20 parking garages across New York City including the garages at issue in this lawsuit.

The Defendants Eric S. Brown and Ian Brown issued checks to him under the name of several different companies including 5 SQUARE MANAGEMENT LLC, 4 SQUARE MANAGEMENT LLC, PPS Union LLC and PPS Utica LLC.

5

The Defendants often issued checks without funds and ended up giving Plaintiff pay in cash once the checks bounced.  These payments were often two weeks late.

Defendant ERIC S. BROWN determined the wages and compensation of the employees of Defendants, including Plaintiff himself.

Defendant ERIC S. BROWN owns and controls the entities by which Plaintiff was employed.

Defendant ERIC S. BROWN had the power to enter into executory contracts on behalf of Defendants 5 SQUARE MANAGEMENT LLC, 4 SQUARE MANAGEMENT LLC., BROWN BROTHERS GROUP LLC, PPS UNION LLC, PPS UTICA LLC, GREENE STREET ACQUISITIONS #1 CORP. d/b/a Greene St. Acquisitions 1 Corp, PARK PRO SYSTEMS INC.

Defendant ERIC S. BROWN had the final word on all decisions regarding the operation of the parking garage.

Defendant ERIC S. BROWN had the authority to hire and fire employees, including Plaintiff himself.

Defendant ERIC S. BROWN had the authority to control and review the payroll practices in place during his employ.

Defendant IAN BROWN determined the wages and compensation of the employees of Defendants.

Defendant IAN BROWN owns and controls the entities by which Plaintiff was employed.

6

Defendant IAN BROWN had the power to enter into executory contracts on behalf of Defendants 5 SQUARE MANAGEMENT LLC, 4 SQUARE MANAGEMENT LLC., BROWN BROTHERS GROUP LLC, PPS UNION LLC, PPS UTICA LLC, GREENE STREET ACQUISITIONS #1 CORP. d/b/a Greene St. Acquisitions 1 Corp, PARK PRO SYSTEMS INC.

Defendant IAN BROWN had the final word on all decisions regarding the operation of the parking garage.

Defendant IAN BROWN had the authority to hire and fire employees, including Plaintiff himself.

Defendant IAN. BROWN had the authority to control and review the payroll practices in place during his employ.

Defendant MARCO BARRANCOS determined the wages and compensation of the employees of Defendants, including Plaintiff himself.

Defendant MARCO BARRANCOS established the schedule for Plaintiff himself.

Defendant MARCO BARRANCOS issued pay to Plaintiff himself. And he issued Plaintiff two checks in order to hide the overtime hours Plaintiff worked.

Defendant MARCO BARRANCOS directed Plaintiff in his daily tasks and assignments.

Defendant MARCO BARRANCOS had the authority to hire and fire employees.

Defendant PAUL PIERORAZIO determined the wages and compensation of the employees of Defendants.

Defendant PAUL PIERORAZIO supervised and managed the operations of several of Defendant Brown's parking garages including the one in which Plaintiff worked.

7

Defendant PAUL PIERORAZIO had the authority to hire and fire employees and did so.

Defendant PAUL PIERORAZIO was the general manager of the parking garages and implemented the Defendants' pay practices by directing his managers such as Defendant MARCO BARRANCOS to pay Plaintiff without proper overtime premiums, inter alia.

Plaintiff was employed by Defendants from approximately March 2021 and September 30, 2023.

Throughout his employment with defendants, Plaintiff was employed by Defendants as a parking attendant and general laborer at several of their garages.

Plaintiff regularly handled articles in interstate commerce, such as moving and parking vehicles for people that came from outside the state of New York. His work duties required neither discretion nor independent judgment. Plaintiff regularly worked in excess of 40 hours per week.

From March 2021 through July 2021, Plaintiff worked for the Defendants at 256 Utica Ave at the following typical schedule (38 hours per week on average):

    a. Monday: 3:00 P.M. until 12:00 AM

    b. Tuesday: 3:00 P.M. until 12:00 AM

    c. Wednesday: Day Off (Dia Libre)

    d. Thursday: Day Off (Dia Libre)

    e. Friday: Day Off (Dia Libre)

    f. Saturday : Day Off (Dia Libre)

    g. Sunday: 6:00 A.M. to 12:00 A.M

From August 2021 through February 2022, Plaintiff worked between the location at 53 Broadway and 321 Wythe Ave at the following typical schedule (75 hours on average)

8

h.  Monday: 6:00 A.M. to 3:00 P.M

i.  Tuesday: 6:00 A.M. to 3:00 P.M

j.  Wednesday: 6:00 A.M. to 3:00 P.M.

k.  Thursday: 6:00 A.M. to 5:00 P.M

l.  Friday: 5:30 A.M. to 12:00 A.M.

m.  Saturday: 7:00 A.M. to 7:00 P.M

n.  Sunday: 7:00 A.M. to 7:00 P.M

From March 2022 through the end of his employ on September 30, 2023, Plaintiff worked at primarily at 321 Wythe Ave, and three to five times per month at another garage owned by them when they were short staffed, at the following typical schedule (an average of 99 hours):

o.  Monday: 12:00 A.M. to 6:00 A.M. and 3:00 P. M. to 12:00 A. M.

p.  Tuesday: 3:00 P.M. to 12:00 A.M.

q.  Wednesday: 3:00 P.M. to 12:00 A.M.

r.  Thursday: 3:00 P.M. to 12:00 A.M.

s.  Friday:  3:00 P.M. to 11:59 P.M

t.  Saturday: 12:00 A.M. to 11:59 P.M

u.  Sunday: 12:00 A.M. to 11:59 P.M.

Plaintiff worked from 3:00 p.m. on Fridays and stayed in the garage all weekend until the following Monday at 6:00 a.m. before starting the week all over again. The other people who were supposed to relieve him never came in and Plaintiff was forced to stay and work. In fact, Plaintiff was sleeping and eating in the garage and changing clothes in the bathroom there.

Defendants paid Plaintiff a straight time rate of $15.00 an hour with no premium for overtime pay for the first six months of his employ from March 2021 until August 2021.

The Defendants paid Plaintiff $16.00 per hour from September 2021 until February 2022 for all hours worked with no premium for his overtime hours.

From March 2022 until September 30, 2023 Defendants paid Plaintiff $17.00 per hour with no overtime premiums for the hours Plaintiff worked over 40

To the extent the Court determines that the factual allegations are incomplete, ambiguous, or otherwise defective, Plaintiff would respectfully request leave to submit supplemental declarations and/or to testify before the Court at an Inquest.

<u>Plaintiff is entitled to Judgment by Default</u>

"The failure by a corporate defendant to obtain counsel constitutes a failure to defend," warranting the entry of a default judgment." *CAEL TECHNOLOGIES (PVT.) LTD. v. PRECISE VOTING, LLC*, No. CV-01470 (E.D.N.Y. Sept. 26, 2016).

 A party who fails to appear or defend an action, even after initially interposing an answer, is eligible to be defaulted upon motion whereupon the Clerk of the Court may be directed to strike the Answer and enter a default. **See Id**.

Upon entry of a default, the court may award damages based upon evidence submitted through affidavits and exhibits, or by an evidentiary hearing. Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012). "While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory." Id. "Together, 'Rule 55(b)(2) and relevant case law give district judges

much discretion in determining when it is "necessary and proper" to hold an inquest on damages.'" *Id.* (quoting Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993)).

Plaintiff maintains that the proof submitted herewith is sufficient on its own to obviate the need for a hearing on damages. However, to the extent the Court views the attached declarations as incomplete or that further inquiry is warranted, the undersigned would respectfully request leave to submit a supplemental affidavit or to conduct an inquest before the Court using the attached declaration as a starting point to accelerate the presentation of testimony.

Based on the evidence Plaintiff has put forward, damages, including back pay and liquidated damages, should be awarded in the amount of $126,200.00 in favor of Plaintiff, and fees and costs should be awarded in the amount of $6,880.00.

Plaintiff's Damages Calculation

Annexed as Exhibit D is a chart setting out the damages Plaintiff is entitled to recover.

In the damages chart, the Plaintiff's wage and hour damages (including Minimum wage and overtime wage damages, liquidated damages, and interest) are calculated in segments of time, broken into "Pay Periods."

These are weekly pay periods.

Defendants paid Plaintiff a straight time rate without a premium for his overtime hours.

In the damages chart, the Plaintiff's wage and hour damages (including Minimum wage and overtime wage damages, liquidated damages, and interest) are calculated in segments of time, broken into "Pay Periods."

Each pay period calculates the number of weeks in each period ("No. of Weeks in Pay Period"), and then based upon each of the Plaintiff's affidavits, lists the number of hours worked per week in each period ("Hours Per Week in Period).

The applicable minimum wage data, and associated overtime rate, are included as applicable for each pay period. Then there is a column for Paid Wages, the first column calculates the "regular rate of pay" for each period by dividing the amount actually paid each week to each Plaintiff (the "Credited Weekly Pay") for each period, then dividing that amount by the "Hours Per Week in Period").

The overtime rate is calculated using a 1.5 multiplier for time and a half overtime calculation later in the chart. The "Credited Weekly Pay" is the amount of money actually paid and is based upon the Plaintiff's affidavit.

The information the number of days each week in that period for which either of the Plaintiff worked in excess of 10 hours per day is also included and was therefore entitled to Spread of Hours Pay ("No. of SOH Days Per Wk in Period").

Calculations within the Chart – The "Lawful Weekly Pay" column of the chart calculates what the Plaintiff should have been paid per week during each pay period. The actual formula used in this column is as follows: ((greater of minimum wage or calculated base pay) * Hours Per Week up to 40) + ((greater time and a half rate) * (Hours Per Week over forty, if any)).

The chart therefore automatically determines whether the effective calculated base rate of pay falls below the minimum wage, and if it does, it discards it. If it does not, it uses it for the subsequent calculations (as the Plaintiff is entitled to earn at least the minimum wage). The chart then automatically calculates what the hours should have been compensated at under the base rate

12

of pay up to the first 40 hours of work per week, and then at time-and-a-half pay for any hours over 40.

The Chart then subtracts the amount actually paid to Plaintiff (the "Credited Weekly Pay") and then derives the "Underpayment per Week." This number is then multiplied by the number of weeks in each period and derives the total damages due for unpaid minimum wages and overtime for each period ("Unpaid Wages & OT"). The Chart then applies the liquidated damages provisions of the NYLL to the "Unpaid Wages and OT" automatically in the "Liq. Damages on Wages & OT" by 25% for damages occurring prior to April 9, 2011 and 100% for any subsequent damages.

The unpaid spread of hours pay ("Unpaid Spread of Hours (SOH) Pay") is derived by multiplying (the number of SOH days per week) * (the number of weeks per period) * (the minimum wage). The liquidated damages on SOH pay are all calculated at the rate of 100%.

The legal basis for the damages calculations within the chart are set out below.

<u>Unpaid Overtime Premiums</u>

At all times relevant to the FLSA claims in this action, the minimum wage rate under the FLSA was $7.25 per hour.

Employees must be paid one-and-one half times their regular rate for each hour worked over forty (40) hours worked in a week. 29 U.S.C. § 207(a)(1).

The New York minimum wage for small employers was $12.00 per hour in 2018. The New York Minimum wage range increased to $15.00 per hour as of December 31, 2018 for large employers in New York City with 11 or more employees or $13.50 an hour for small employers with 10 or less employees. It further increased to $15.00 per hour for all New York City employees

13

on December 31, 2019 through 2023; New York's rules on overtime explicitly incorporate those of the FLSA, and thus require pay at one-and-one-half times the regular normal rate for each hour over forty hours worked in a week. 12 N.Y.C.R.R. § 142-2.2.

The NY minimum wage rate in NYC was $8.00 in 2014, $8.75 in 2015, $9.00. in 2016, $11.00 for large employers and $10.50 for small employers in 2017 and $13.00 for large employers and $12.00 for small employers in 2018.

The onus is on the employer to maintain proper records of employees' hours worked, 29 U.S.C. § 211(c). "In a FLSA case, in the absence of rebuttal by [D]efendants, [P]laintiffs' recollection and estimates of hours worked are presumed to be correct." Zeng Liu v. Jen Chu Fashion Corp, 2004 U.S. Dist. LEXIS 35, *8 (S.D.N.Y. 2004) (the court accepted the Plaintiff's estimates of hours worked).

> An employee has carried out his burden [of production under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated[,] and if he produces sufficient evidence to show the amount and extent of that work by just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. *Id.* (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946), and other cases).

Here, Plaintiff was paid using a straight time rate without an overtime premium. Due to the Defendants' failure to keep and/or provide time records for the Plaintiff, the Plaintiff presents a calculation based on his approximation of his average weekly hours, putting aside variation on a day to day or week to week basis.

14

Plaintiffs was paid a straight time rate which did not compensate him at the appropriate overtime rate when his weekly hours exceeded 40.

Plaintiff is owed $52,915.00 in unpaid wages prior to liquidated damages. **See** **Exhibit E**.

Three Year Statute of Limitations Under FLSA

Under the FLSA, when the underpayment by the employer is willful, the limitations period increases from two (2) to three (3) years.  29 U.S.C. § 255(a.)

Willfulness under the FLSA means the employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute," McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988), Damassia v. Duane Reade, Inc.,  2005 U.S. Dist. LEXIS 9768 at *5 (S.D.N.Y. May 20, 2005) (willfulness was properly pleaded by alleging, inter alia, that the employer was "aware of the existence of the FLSA and its overtime requirements.").

Willfulness is also established when an employer fails to investigate whether its compensation policy was legal.  See Hardrick v. Airway Freights Systems, Inc., 63 F. Supp. 2d 898, 904 (N.D.Ill. 1999) v. IBP, Inc., 339 F.3d 894, 909 (9th Cir. 2003), aff'd, 126 S.Ct. 514 (2005) (upholding the three-year statute of limitations because employer was on notice of FLSA requirements but "took no affirmative action to assure compliance" with them).

In the present matter, Defendant was aware, or should have been aware, of the existence of the FLSA and its overtime requirements. However, the Defendant knew or disregarded the fact that their conduct was prohibited by the FLSA. Furthermore, even if the Defendant did not know of the FLSA, the Defendant' actions are still willful because the Defendant failed to investigate whether their compensation policy was legal.  See Hardrick, 63 F. Supp. 2d at 904.

15

This deliberate decision to disregard both FLSA and New York law, as well as Defendant' failure to take any affirmative step towards compliance, amount to willfulness for purposes of the FLSA and New York law.   Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 340 (S.D.N.Y. 2005) ("A failure to pay is 'willful' when the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages") (internal quotations omitted).

As Plaintiffs can establish that Defendant' violation of the FLSA was willful, they are entitled to a three-year limitations period under the FLSA. See, e.g., Decraene v. Neuhaus (U.S.A.), Inc., 2005 U.S. Dist. LEXIS 10836 at *23-*24 (S.D.N.Y. 2005).

Furthermore, under the New York Labor Law and regulations, the limitations period is six years, regardless of willfulness.  N.Y. Labor Law § 663(3).  Causes of action under the New York Labor Law accrue in the same manner as do causes of action under the FLSA.  See Godlewska v. Human Dev. Assoc., Inc., 2006 U.S. Dist. LEXIS 30519 at *12 (E.D.N.Y. May 18, 2006). Therefore, back pay under the New York Labor Law should be calculated from the start of Plaintiff's employment, which was less than six years from the filing date.

<u>Wage Notice and Statement Violations</u>

Defendant never provided Plaintiff with annual notices of their wages, or proper and complete wage statements, as required by NYLL §§ 195(1), 195(3). Plaintiff is therefore entitled to statutory damages in the maximum amount of $5,000 under each section, for a total of $10,000 to Plaintiff.

<u>Liquidated Damages</u>

Liquidated damages of 100% of the unpaid wages under the FLSA are mandatory. **See** 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages"). The employer can make this award discretionary, however, by a showing of good faith. 29 U.S.C. § 260. In the present matter, the Defendant have defaulted. Consequently, they cannot meet this burden, and thus an award of liquidated damages is mandatory. Liquidated damages should be awarded in an amount equal to the unpaid minimum wages and overtime. 29 U.S.C. § 216(b).

Likewise, under the NYLL, "an employee is also entitled to liquidated damages 'equal to one hundred percent of the total of such underpayments found to be due,' unless the employer proves a good faith basis for believing he or she was in compliance with the law." Wei, 2014 U.S. Dist. LEXIS 182325, *23 (quoting N.Y. Lab. Law § 663(1)).

Given the uncontroverted evidence of Defendant' lack of good faith

Plaintiffs are entitled by statute to liquidated damages under the New York Labor Law, computed at 25% of the unpaid minimum and overtime wages for the period of time prior to April 9, 2011 and 100% for any subsequent unpaid minimum and overtime wages.

Plaintiff's total unpaid wages equal $52,915.00 (this reflects the combined unpaid wages cited above). He is entitled to liquidated damages in the amount of $52,915.00. **See Exhibit E**.

Wage Notice and Statement Violations

17

Defendant never provided Plaintiff with annual notices of their wages, or proper and complete wage statements, as required by NYLL §§ 195(1), 195(3). Plaintiff is therefore entitled to statutory damages in the maximum amount of $5,000 under each section, for a total of $10,000 to Plaintiff.

<u>Spread of Hours Pay</u>

Plaintiff was also entitled to "spread-of-hours" pay under the New York spread-of-hours regulation, which requires employers to pay workers for an additional hour of overtime-rate pay beyond their regular pay when the workday is more than ten (10) hours. In New York, under the Miscellaneous Industries and Occupations Wage Order, employees are entitled to one additional hour of pay at the basic minimum wage rate for any day their workday (the "spread of hours") exceeds 10 hours 12 N.Y.C.R.R. § 142-2.4.

As set out above, Plaintiff frequently worked more than ten hours per day throughout his employment.

Plaintiff is entitled to $10,185.00 in unpaid spread of hours pay and another $10,185.00 in liquidated damages. **See** <u>Exhibit E</u>

<u>Attorneys' Fees and Costs</u>

The FLSA and the New York Labor Law both contain fee-shifting provisions for actions to recover unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the Plaintiff or Plaintiff, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); N.Y. Labor Law § 663(1) An employee] may recover . . . costs and such reasonable attorney's fees as may be allowed by the court").

Plaintiffs incurred costs and attorneys' fees in pursuing this action, and seeks an award of

reasonable attorney's fees and costs.

The costs are a total of $2,905.00, including a filing fee of $405.00 and $2,500.00 in fees associated with serving the Defendants with the summons and complaint.

Plaintiff's counsel are seeking attorneys' fees of $3,975.00 reflecting 10.6  hours of attorney work at the following rates: Colin Mulholland Esq. $375.00 per hour.

A brief biography of the undersigned is as follows:

I am a solo practitioner who focuses on FLSA and employment claims in New York City. I was admitted to practice in February of 2013. Prior to managing his own practice, I have been litigating dozens upon dozens of FLSA claims and employment claims throughout the entirety of my career. I have been lead counsel on over 84 cases in the Eastern District and 128 cases in the Southern District – almost all of those cases being FLSA cases that resulted in favorable settlements for my clients.

I have successfully conducted the trial of four (4) FLSA claims as sole trial counsel in the Southern District.  Each of those trials resulted in a significant finding of liability in favor of the plaintiffs.  These trials included two jury verdicts in favor of plaintiffs:

> Wilmer Calle et al v. NDG Coffee Shop, Inc yielded a jury verdict of over $2.2 million dollars
>
> Carrasco Flores et al v. NYC Pasta and Risotto Co. LLC yielded a verdict of over $195,000.00.

My highest approved rate is $375.00 per hour which was explicitly approved by the Honorable Richard Sullivan in 2018. **See** Wilmer Calle et al. v. NDG Coffee Shop, Inc, et al., No.

16-cv-7702 (SDNY 2018).   And, this rate has also been explicitly been approved by Magistrate Cheryl L. Pollak in 2022:

"Based on the Court's knowledge of the rates generally charged for this type of work in connection with an FLSA default, the Court finds that the rate of $375 per hour for a sole practitioner of Mr. Mulholland's experience is within the range of billing rates of similarly experienced attorneys working on comparable matters in the Eastern District. See, e.g., Sajvin v. Singh Farm Corp., No. 17 CV 4032, 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018) (awarding $500 per hour to partner in FLSA case, though noting that "$450 has been the upper limit in this District since at least 2013"); Gutman v. Klein, No. 03 CV 1570, 2009 U.S. Dist. LEXIS 123057, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009) (stating that rates between $300 and $400 for partners are within the reasonable range in the Eastern District of New York)." Cruz v. O & M Pizza Corp., 2022 U.S. Dist. LEXIS 148240, *29-30, 2022 WL 3448661; see also Flores v. Urciuoli, 2022 U.S. Dist. LEXIS 5637, *20, 2022 WL 987353

Based on the above information and exhibits, Plaintiff asserts the record supports a judgment against the Defendants in favor of the Plaintiff.

As shown herein, no inquest is necessary when, as in the present case, the Court has before it the proper measure of damages and evidence submitted by the Plaintiffs that allows damages to be calculated with reasonable certainty.

No part of the judgment sought has been paid.

Sufficient definitive information and documentation is provided such that the amount provided for in the proposed judgment can be calculated, based upon allegations contained in the Complaint, and supplemented by the Plaintiff's declaration accompanying these motion papers.

Plaintiff also makes a request for interest on the principal amount of the judgment not to exceed 9%, as stated above and in the damage calculations.

Plaintiff also request that the judgment provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4).

The calculations made in arriving at the proposed judgment amount are set forth in both the explanation above, and in the damages chart itself.

A proposed form of judgment is attached as Exhibit G.

For the reasons stated above and in the accompanying declarations and exhibits, the Plaintiff's motion for a default judgment should be granted

Dated: Astoria, New York
      August 25, 2025

                                        */s/Colin Mulholland, Esq.*
                                        Colin Mulholland, Esq.